AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | | |
|---|---|---|
| United States of America<br>v.<br>LEPHAINE JEFF CHARLES<br><br>*Defendant(s)* | )<br>)<br>)<br>)<br>)<br>) | Case No. 13-8185-WM |

FILED by ____ D.C.
APR 0 9 2013
STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __April 9, 2013__ in the county of __Palm Beach__ in the __Southern__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 USC Section 841 | Possession with intent to distribute cocaine. |

This criminal complaint is based on these facts:
See Attached Affidavit.

☑ Continued on the attached sheet.

_____
Complainant's Signature

Christine Suarez, TFO, DEA
Printed name and title

Sworn to before me and signed in my presence.

Date: April 9, 2013

_____
Judge's signature

City and state: West Palm Beach, FL

U.S. Magistrate Judge William Matthewman
Printed name and title

# AFFIDAVIT

Your affiant Christine Suarez, first being duly sworn, does hereby depose and state as follows:

1. Your affiant is a Task Force Officer assigned to the Miami Field Division, West Palm Beach Resident Office of the DEA. I have been a Task Force Officer since January 2013. I have been a law enforcement officer with the City of Delray Beach, Florida since January 2004. As a Task Force Officer with the United States Department of Justice, I am authorized to conduct criminal investigations of violations of Title 21 of the United States Code. I have received extensive training in conducting narcotics investigations and in identifying the means and methods used by narcotic traffickers. I have conducted or participated in numerous investigations which have resulted in narcotic seizures, arrests of individuals and their respective prosecutions. Much of this training and experience has been directed at the detection, investigation, seizure and prosecution of individuals involved in the manufacture, possession and distribution of illegal drugs.

2. The information contained in this affidavit is based on my own personal knowledge as well as information imparted to me from other law enforcement officers and agents. This affidavit is submitted for the limited purpose of establishing probable cause of violations of Title 21, United States Code, Sections 841(a)(1) and 846, by Lephaine Jeff CHARLES. It does not purport to describe everything known to your affiant concerning the investigation.

3. On April 9, 2013, at approximately 12:41 a.m., the North County Communication Center received a call from a resident. The caller stated that a boat, approximate 20 feet in

length, had washed up on the beach in the last forty-five minutes. The caller stated that no one was near the boat when he/she saw it.

4. Officers from the Jupiter Police Department and the Juno Beach Police Department responded to the area. Upon checking the area, Officers located a center console vessel with a single outboard engine that had been beached. Officers observed two sets of foot prints that started at the vessel at went up the beach.

5. While Officers were canvassing the area, an Officer observed a male run out from the sea grapes along the east side of A1A, cross A1A, and then run into the wooded area directly west of where the Officer had first seen the subject. Officers gave chase but lost sight of the subject.

6. While a perimeter was being established, two Officers entered the wooded area where the subject had fled in an attempt to determine the subject's direction of travel. Approximately ten to fifteen yards from the subject's entry point into the wooded area, an Officer located a red and black duffel bag lying on the ground. The duffel bag appeared to be lying in the direct path the subject had fled based on the freshly disturbed ground cover. Upon opening the duffel bag, Officers found it to contain approximately fifteen brick-like kilogram packages that were wrapped in a clear cellophane tape and black plastic wrap. Officers opened one of the packages and found it to contain a white powdery substance that field tested positive for the presence of cocaine.

7. Through the use of a Police K-9, Officers located the subject, later identified as Defendant Lephaine Jeff CHARLES, approximately a quarter mile from where CHARLES was seen entering the wooded area. During the arrest, CHARLES resisted officers by striking the Police K-9 and was subsequently bit by the K-9 during his arrest.

The second subject, identified as Rick DAVIS, was also located by a Police K-9 and taken into custody. DAVIS, who is a Bahamian National, is an illegal reentry and is currently being held on immigration related charges.

8. After receiving medical attention, CHARLES was transported to the Homeland Security Office located in Riviera Beach. CHARLES was read his Miranda warnings from a DEA-13 form that was translated into Creole by a Customs and Border Protection Officer. CHARLES stated he understood his rights, signed the form, and agreed to speak with Officers. CHARLES stated that in approximately 2009 he met an individual who he only as "Fegens." CHARLES stated that over time, he learned that "Fegens" was a smuggler. CHARLES stated that he and "Fegens" had discussed CHARLES moving to the United States in the interest of starting a new and better life.

9. CHARLES stated he and "Fegens" lost contact, but once again met again in February 2013 in Haiti. At that time, CHARLES and "Fegens" once again discussed CHARLES moving to the United States and "Fegens" agreed to assist CHARLES. CHARLES stated "Fegens" obtained a Bahamian Visa for him (CHARLES) to enter the Bahamas along with an airline ticket to fly from Haiti to the Bahamas. On March 19, 2013, CHARLES stated he entered the Bahamas by airline. CHARLES stated that upon arriving in the Bahamas, he called a telephone number that had been given to him by one of "Fegens'" associates. Upon contacting this telephone number, an unknown individual picked CHARLES up at the airport and transported him to another airport. CHARLES stated he was flown to a second unknown island from which he was then transported to a third island. CHARLES stated he was then taken to an apartment where he was eventually met by "Fegens" later that evening. CHARLES stated that

he was instructed to stay in the room to avoid law enforcement detection. CHARLES stated "Fegens" would come by the apartment two times a day to check on him.

10. CHARLES stated he was told that they were originally going to attempt to enter the United States via vessel during the week of March 19, 2013. Due to poor weather conditions the trip was cancelled. CHARLES stated they once again attempted to cross this past Wednesday (April 3, 2013). CHARLES stated on this date, he and other unknown individuals left the Bahamas in a vessel with the intent on crossing. CHARLES stated that during that trip, they saw a Coast Guard boat and decided to return to the Bahamas.

11. CHARLES stated on April 8, 2013, at approximately 9:00 p.m., he along with DAVIS and an unidentified boat captain left the Bahamas in what CHARLES described as a boat with a canopy. CHARLES denied that the boat law enforcement found beached was the boat they had traveled in. Prior to leaving the Bahamas, CHARLES stated he was given a red and black duffel bag by "Fegens" which he (CHARLES) admitted to knowing contained kilogram quantities of cocaine. CHARLES stated that DAVIS was also given a blue or black duffel bag that he (CHARLES) suspected also contained cocaine.

12. CHARLES stated that he was instructed by "Fegens" that upon arriving in the United States, he was to wait in the bushes along the beach area for a vehicle to arrive and flash its lights. CHARLES stated "Fegens" gave him a rubber banded bundle of United States currency that he was to give to the individual who picked him up in the United States. This currency that was recovered from CHARLES was determined to be approximately $1,000.

13. Upon arriving in the United States, CHARLES stated the boat captain dropped him and DAVIS off in knee deep water along the beach. CHARLES stated the boat captain then left. CHARLES stated that after exiting the water, he and DAVIS followed "Fegens" directions

and entered the wooded area and sat on their duffel bags. Upon seeing the police lights, CHARLES stated that he and DAVIS fled in separate directions while carrying their duffel bags.

14.     On the basis of the foregoing, your affiant respectfully submits that probable cause exists to charge Lephaine Jeff CHARLES with Possession With Intent to Distribute 5 Kilograms or More of a Mixture and Substance Containing Cocaine, a Schedule II controlled substance, and Conspiracy to commit the aforementioned offense, in violation of Title 21, United States Code, Sections 841(a)(1) and 846.

FURTHER YOUR AFFIANT SAITH NAUGHT.

Christine Suarez
TASK FORCE OFFICER
U.S. DRUG ENFORCEMENT ADMINISTRATION

SWORN TO AND SUBSCRIBED BEFORE ME
THIS 9th DAY OF APRIL, 2013, IN WEST
PALM BEACH, FLORIDA.

WILLIAM MATTHEWMAN
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

No. 13-8185-WM

UNITED STATES OF AMERICA

vs.

LEPHAINE JEFF CHARLES,

**Defendant.**
_____/

## CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to October 14, 2003?  _____ Yes __X__ No

2. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to September 1, 2007?  _____ Yes __X__ No

Respectfully submitted,

WIFREDO A. FERRER
UNITED STATES ATTORNEY

BY: _/s/ Carolyn Bell_____
CAROLYN BELL
ASSISTANT UNITED STATES ATTORNEY
Carolyn.Bell@usdoj.gov
Admin. No. A5500286
500 S. Australian Avenue, Suite 400
West Palm Beach, FL 33401-6235
Tel: (561) 820-8711
Fax: (561) 820-8777